IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TERRY HARRIS,
        Plaintiff,

v.                                                                        Civil Action No. 3:20cv794

POWHATAN BOARD OF SUPERVISORS
POWHATAN COUNTY, VIRGINIA,
        Defendant.

## OPINION

This case involves an employment dispute between the plaintiff, Terry Harris, and his former employer, the Powhatan County Board of Supervisors (the "County"). Harris, who worked for the County as a Maintenance Worker III, contends that the County discriminated against him because of his race, age, and disability.[1] The County says that it fired Harris because he could not perform the essential requirements of his job or any other available job with the County.

Even viewed in the light most favorable to Harris, the evidence shows that the County fired Harris for a legitimate, nondiscriminatory reason—his inability to perform the essential requirements of his job or any other available job with the County. Harris has not pointed to any evidence that shows the County fabricated this reason as a pretext for racial, age, or disability discrimination. The Court, therefore, will grant summary judgment to the County.

---

[1] Harris brings three claims: racial discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count One); an age discrimination claim under the Age Discrimination in Employment Act ("ADEA") (Count Two); and a disability discrimination claim under the Americans with Disability Act ("ADA") (Count Three).

# I. BACKGROUND[2]

Terry Harris, a 64-year-old African American male, worked as a maintenance worker for the County from 2002 until his termination on December 11, 2015. (ECF No. 11, at 1; ECF No. 16-2.) At the time of his termination, Harris worked as a Maintenance Worker III in the Facilities Division of the Department of Public Works. (ECF No. 16-7.) Christian McIntosh worked as the Facilities Supervisor. (*Id.*)

Harris's 2014 job description indicated that performing the essential functions of his job required him "to be able to exert up to 150 pounds of force occasionally, and/or up to 75 pounds of force frequently, and/or 25 pounds of force constantly to move objects." (ECF No. 16-3, at 3.) On December 4, 2014, Harris completed a position questionnaire for a Classification and Compensation Study by the County; on the questionnaire, Harris indicated that his job involved "[f]requently lifting light objects (less than 24 pounds) and [o]ccasionally lifting heavy objects (25 or more pounds)." (ECF No. 16-4, at 9.) He signed the questionnaire, certifying that he provided "accurate and complete" information. (*Id.* at 10.) After the Classification and Compensation Study, the Maintenance Worker III job description provided that "[t]he employee frequently lifts objects [sic] lifts light and heavy objects." (*See* ECF No. 16-5, at 3.)

The Department of Public Works also has a Grounds Division. (ECF No. 16-7.) Harris described the Grounds Division and Facilities Division as "totally two separate departments."

---

[2] In Section II of his opposition brief, Harris identifies facts that he disputes. But he does not support those assertions using the procedures delineated by Federal Rule of Civil Procedure 56(c) and Local Civil Rule 56(B). Accordingly, the Court considers the County's list of material facts "undisputed for purposes of th[is] motion." Fed. R. Civ. P. 56(e).

(ECF No. 16-1, at 12.) David Johnson worked as the Grounds Supervisor. (ECF No. 16-7.) Ramona Carter, the Public Works Director, supervised both Johnson and McIntosh. (*Id.*)[3]

Harris underwent hip surgery in August 2015. Harris's doctor, Dr. Michael Wind, indicated that Harris would probably need medical leave from August 17, 2015, to October 18, 2015. (ECF No. 16-14, at 2.) At a follow-up appointment on October 13, 2015, Dr. Wind noted that Harris must remain out of work until December 2, 2015, after his Family and Medical Leave Act ("FMLA") leave expired. (ECF No. 16-15; ECF No. 16-16.) Despite the expiration of his FMLA leave, the County allowed Harris to use his remaining sick and vacation leave to cover his extended work absence. (ECF No. 16-16.)

On November 30, 2015, two days before his anticipated return to work, Harris saw Dr. Charles Vokac. Dr. Vokac diagnosed him with lumbar stenosis and forbade him from lifting over fifteen pounds for three to six months. (ECF No. 16-20, at 1.) In a meeting the next day, Linda Jones, the County's Human Resources Director, suggested that Harris retire. (ECF No. 17-16, at 2.)

On December 11, 2015, the County fired Harris because "[w]ithout any further information provided by your doctor, and based on the written statement from Dr. Vokac, it appears that you will be unable to return to full duty in your job as a Maintenance Worker III at any time in the near

---

[3] Harris has identified two white men who worked in the Grounds Division as ostensible comparators—Alvin McCauley and James Elder. (ECF No. 17, at 12.)

McCauley took medical leave from March to June 2015 after fracturing his ankle. (ECF No. 17-29, at 1.) At the end of his medical leave, McCauley's doctor cleared him to return to light work. (ECF No. 16-12, at 1.) According to a checklist McCauley's doctor completed, McCauley could perform six of his eight major job duties while working under the light/sedentary work restriction. (ECF No. 16-13.)

Elder, another Caucasian employee in the Grounds Division, took medical leave from July to September 2014 and returned to work with no restrictions. (ECF No. 16-10.) Elder's total medical leave lasted less than two months. (*Id.*) In July 2015, the County fired Elder after his doctor indicated he could no longer physically perform his job functions. (ECF No. 16-11, at 2.)

future." (ECF No. 16-2.) At the meeting where the County told Harris about his termination, Harris asked if he could (a) move to a job at the convenience center, which had no vacancies; (b) remain in his current job on light duty; or (c) fill a Utility Maintenance Worker I/Utility Maintenance Technician vacancy at the wastewater treatment plant while recovering. (ECF No. 16-6, at 25-26, 28.) The Utility Maintenance Worker I/Utility Maintenance Technician position required "recurring lifting of moderately heavy items weighing between 25 and 75 pounds and may require the occasional lifting of objects weighing in excess of 75 pounds." (ECF No. 16-21, at 2.) A meter reader used for the job weighed seventeen pounds. (ECF No. 16-22.)

After his firing, Harris applied both for his old job, which remained vacant for over two months after his termination, and for the Utility Maintenance Technician position at the wastewater plant. (ECF No. 17-32, at 1; ECF No. 17-33, at 2.) The County did not interview him for the Utility Maintenance Technician job because of his health issues and prior history with the County. (ECF No. 17-33, at 1.)

Between late 2016 and early 2017, Harris filed for and received permanent Social Security Disability ("SSDI"). (ECF No. 18-2, at 10.) Harris based his disability application on the same conditions that rendered him unable to work in 2015. (*Id.* at 11.) Harris's health condition did not change between when the County fired him and when he started receiving SSDI. (*Id.* at 10-11.)

## II. DISCUSSION[4]

### A. Title VII (Count One)

Harris does not provide direct evidence of racial discrimination. Accordingly, he must proceed under the *McDonnell Douglas* burden-shifting test. *Sadeghi v. Inova Health Sys.*, 251 F. Supp. 3d 978, 991 (E.D. Va. 2017). Under the *McDonnell Douglas* test, Harris must first establish a prima facie case of racial discrimination. If he does, then the County must "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007)). If the County does that, then Harris must "show that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* (quoting *Lettieri*, 478 F.3d at 646).

The Court assumes, without deciding, that Harris can establish a prima facie case of discrimination.[5] Even so, the Court will grant the County summary judgment because it fired

---

[4] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[5] The Court makes this generous assumption even though it harbors significant doubts about Harris's claim that he has identified appropriate comparators. *Cf. Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981) ("*McDonnell Douglas* teaches that it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally."). The undisputed evidence shows that Elder and McCauley, Harris's ostensible comparators, worked in "totally . . . separate departments" than Harris. (ECF No. 16-1, at 12). They also reported to different supervisors. Thus, Harris has not "show[n] that [he is] similar in all relevant respects to [his] comparator[s]." *Haywood v. Locke*, 387 F. App'x 355, 359 (2010); *see id.* ("Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"

Harris for legitimate, nondiscriminatory, non-pretextual reasons, namely his inability to perform his job's essential functions and the lack of "vacant positions for which Harris was qualified and which he could perform based on his restrictions." (ECF No. 16, at 16.)[6]

Harris does not contest that the County produced legitimate, nondiscriminatory reasons for firing him. Instead, he argues that the County proffered these reasons as a pretext for discrimination. Harris can demonstrate pretext by showing that the County's proffered reasons for firing him "[are] not worthy of belief." *Williams v. Staples, Inc.*, 372 F.3d 662, 669 (4th Cir. 2004). "When evaluating pretext, it is not within [the Court's] purview to question whether the employer's proffered basis for the disputed action 'was wise, fair, or even correct, ultimately, so long as it truly was the reason for' the action." *Ousley v. McDonald*, 648 F. App'x 346, 349 (4th Cir. 2016) (quoting *Laing v. Fed. Express Corp.*, 703 F.3d 713, 719 (4th Cir. 2013)). Moreover, an employee "alleging racial discrimination must show that the protected trait 'actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" *Id.* at 348 (quoting *Hill v. Lockheed Martin Logistics*, 354 F.3d 277, 286 (4th Cir. 2004)). Thus, "the plaintiff must 'show that both the reason advanced [by his employer] was a sham and that the [actual] reason was an impermissible one under law.'" *Id.* at 349 (quoting *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1235 (4th Cir. 1995)).

Harris claims that the speed with which the County determined that he could not perform his job's essential duties shows pretext. But Harris cites no authority to support his argument that

---

(quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992))). Moreover, the County treated Elder similarly to Harris when he could no longer perform his job functions.

[6] *Cf. Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision.").

6

the timing of the County's decision to fire him makes its stated reasons for firing him "not worthy of belief." *Williams*, 372 F.3d at 669. Moreover, the undisputed evidence shows that the County did not hasten to fire him. Instead, the County allowed Harris to use sick and vacation leave to extend his FMLA leave so that he had additional time to heal and attempt to return to work.

Harris also claims that "the County has not adduced any evidence to establish that Mr. Harris'[s] position entailed frequently lifting objects over 15 pounds as claimed." (ECF No. 17, at 19.) Not so. The County has shown that in the 2014 position questionnaire, *Harris himself* said that his job required "[f]requently lifting light objects (less than 24 pounds) and [o]ccasionally lifting heavy objects (25 or more pounds)." (ECF No. 16-4, at 9.)

Despite this admission, Harris says three exhibits support his assertion that his "position [Maintenance Worker III] did not require heavy lifting." (ECF No. 17, at 4 (citing ECF No. 17-4, 17-6, & 17-6).) But these exhibits do not support Harris's argument; they contradict it. The first exhibit provides a job description for the senior facilities maintenance worker. That description says that the job requires the employee "to exert up to 150 pounds of force occasionally, and/or up to 75 pounds of force frequently, and/or 25 pounds of force constantly to move objects." (ECF No. 17-4, at 2.) The other two exhibits provide job descriptions for the Facilities Supervisor and Maintenance Coordinator, not for Maintenance Worker III. And, in any event, the Maintenance Coordinator job description states that the employee "[m]ust be able to exert up to 150 pounds of force occasionally, and/or up to 75 pounds of force frequently, and/or 25 pounds of force constantly to move objects." (ECF No. 17-6, at 2.) Thus, the evidence to which Harris cites belies his claim that his position did not require heavy lifting.

Harris has failed to demonstrate that the County offered the legitimate, nondiscriminatory reasons for firing him as a mere pretext for discrimination. Thus, even if Harris could establish a

prima facie case of discrimination—a dubious proposition at best—the undisputed material facts entitle the County to summary judgment.

## B. ADEA (Count Two)

"The ADEA 'prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age because of the person's age.'" *Tickles v. Johnson*, 805 F. App'x 204, 206-07 (4th Cir. 2020) (quoting *EEOC v. Baltimore County*, 747 F.3d 267, 272 (4th Cir. 2014)). "A plaintiff can prove a violation of the ADEA through direct or circumstantial evidence." *Cole v. Fam. Dollar Stores of Md., Inc.*, 811 F. App'x 168, 172 (4th Cir. 2020).[7] "Regardless of the method of proof, a plaintiff retains the ultimate burden to prove by a preponderance of the evidence that age or retaliation was 'the "but-for" cause of the challenged employer decision.'" *Id.* A plaintiff "cannot prevail on an age discrimination claim by showing that age was *one* of multiple motives for an employer's decision; the employee must prove that the employer *would not have fired [him]* in the absence of age discrimination." *Id.* (quoting *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019)).

Harris has not met that burden here. The County "has presented evidence of another, legitimate, motivation for" firing Harris other than his age: his inability to perform his job's essential requirements. *Cole*, 811 F. App'x at 175. Harris "has not offered sufficient evidence to suggest that [his inability to perform his job's essential requirements] was not 'the reason' for [his]

---

[7] Harris contends that he has offered evidence of direct discrimination—Jones's suggestion during the December 1, 2015 meeting that Harris retire. The Court has serious doubts that this constitutes direct evidence of age discrimination. *See Stephens v. Gutierrez*, No. 1:08cv870, 2010 WL 1005189, at *4 (E.D. Va. Mar. 15, 2010) ("[R]etirement is not synonymous with age."). Nevertheless, the Court assumes without deciding that this could constitute direct evidence of an ADEA violation. Even with this assumption, Harris still cannot establish "that age or retaliation was 'the "but-for" cause of the challenged employer decision.'" *Cole*, 811 F. App'x at 172 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).

8

termination, such that a reasonable juror could find age was instead the determinative factor in that decision." *Id.*[8] "Accordingly, viewing the evidence in the light most favorable to [Harris], [his] . . . direct evidence . . . at best demonstrate[s] that 'age was simply a motivating factor,' not the 'but-for cause,' of [his] termination." *Cole*, 811 F. App'x at 176. Thus, the Court will grant summary judgment to the County on Harris's ADEA claim.

### C. ADA (Count Three)

Harris contends that the County violated the ADA by "fail[ing] to accommodate him when he was able to return to work with restrictions." (ECF No. 11 ¶ 62.)

To establish a failure to accommodate claim under the ADA, Harris "must show (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [County] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [County] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

Harris's ADA claim fails for several reasons. First, Harris receives SSDI due to his injuries. Thus, he "must proffer a sufficient explanation" "to warrant a reasonable [jury] concluding that," despite the statement Harris made to receive SSDI, he "could nonetheless

---

[8] *See also supra*, Section II.A (explaining how Harris has not proven that the County offered its legitimate, non-discriminatory reason for firing him as a pretext for discrimination).

'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999). He has not done so here.

Harris testified that nothing about his condition had changed between when the County fired him and when he applied for and received SSDI.[9] In fact, the County's decision to fire Harris helped him obtain SSDI.[10] Without a sufficient explanation for the contradiction between the position Harris took regarding his ability to return to work when applying for SSDI and his position regarding that same issue in the instant litigation, no reasonable juror could conclude that Harris could perform the essential functions of his job with or without reasonable accommodation. This entitles the County to summary judgment on Harris's ADA claim. *Cleveland*, 526 U.S. at 805-07.

Even if Harris had offered a sufficient explanation for this contradiction, his claim would still fail because he could not perform the essential functions of his job. *See supra* Section II.A. Harris counters that he could have performed his job's essential functions if the County allowed other employees to assist him with heavy lifting. He also says that the County could have transferred him to an open position in the Wastewater Treatment Plant. Both arguments fail.

First, the County need not allow or require other employees to help Harris with the essential functions of his job. *See EEOC v. Womble Carlyle Sandridge & Rice, LLP*, 616 F. App'x 588, 593-94 (4th Cir. 2015) ("[T]he employee's request that someone else do the heavy lifting for him was 'unreasonable because it [would] require[] another person to perform an essential function of [the] job'" (quoting *Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002))). Second, Harris

---

[9] This admission undercuts Harris's claim in his opposition brief that his condition deteriorated after the County fired him.

[10] (ECF No. 17-1, at 33 ("At first, [the Social Security Administration] denied me disability after seeing their doctor. Then I took the form that the [C]ounty gave me saying that I couldn't come back to work and sent that to social services to the—and next thing I know, I got a call. . . . Next thing I know, they said I was drawing—I could draw disability.")).

10

could not perform the essential functions of the position at the Wastewater Treatment Plant because it required heavy lifting. (ECF No. 16-21.) Accordingly, the Court will grant summary judgment to the County on Harris's ADA claim.

### III. CONCLUSION

The undisputed material facts entitle the County to summary judgment on all three counts. Accordingly, the Court will grant summary judgment for the County.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 29 June 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge